1  David A. Kettel, Esq. (State Bar No. 125745)
   THEODORA ORINGHER PC
2  1840 Century Park East, Suite 500
   Los Angeles, California  90067-2120
3  Telephone: (310) 557-2009
   Facsimile: (310) 551-0283
4  Email: dkettel@tocounsel.com

5  Attorneys for Claimant BOARD OF
   MANAGERS OF THE WALKER
6  TOWER CONDOMINIUM, aka
   RESIDENTIAL SECTION OF THE
7  WALKER TOWER CONDOMINIUM

8

9              **UNITED STATES DISTRICT COURT**

10   **CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION**

11

12  UNITED STATES OF AMERICA,          Case No. CV-16-5376-DSF-PLA

13          Plaintiff,

14      vs.                             **OPPOSITION TO *EX PARTE***
                                        **APPLICATION TO UNSEAL**
15  REAL PROPERTY LOCATED IN            **DOCUMENTS; MEMORANDUM**
    NEW YORK, NEW YORK,                 **OF POINTS AND AUTHORITIES;**
16                                      **DECLARATIONS OF DAVID A.**
          Defendant.                    **KETTEL AND DAVID L. BERKEY**
17
                                        Action Filed:  July 20, 2016
18  BOARD OF MANAGERS OF THE
    WALKER TOWER CONDOMINIUM,
19  aka RESIDENTIAL SECTION OF
    THE WALKER TOWER
20  CONDOMINIUM,

21          Claimant.

22

23      Claimant BOARD OF MANAGERS OF THE WALKER TOWER

24  CONDOMINIUM, aka RESIDENTIAL SECTION OF THE WALKER TOWER

25  CONDOMINIUM ("the Board") hereby opposes the *ex parte* application of Plaintiff

26  United States of America ("the Government") to unseal documents ("the

27  Application").  As discussed below, the Application is both procedurally and

28  substantively improper and states no proper grounds for the granting of *ex parte*

1 relief.  Therefore, the Application should be denied.

2    **I.    INTRODUCTION**

3    The current controversy arises out of the Board's assertion of its right of first

4 refusal ("ROFR") over the Government's anticipated sale of the defendant real

5 property ("PH1") it acquired through this civil forfeiture action to Ron J. Vinder at a

6 discount of 64% of its former market price.  The Government coyly states in its

7 Application that the Board seeks to preclude the sale based upon "certain rights,"

8 clearly fearful that the Court will be offended by the Government's attempt to

9 trample over the Board's absolute ROFR contained in the Walker Tower By-laws.

10    **A.    Civil Forfeiture Action**

11    On July 20, 2016, the Government filed a civil forfeiture complaint against

12 PH1 in connection with the Malaysian 1MDB corruption scandal, whereby Khadem

13 al-Qubaisi used funds allegedly misappropriated from 1Malaysia Development

14 Berhad, Malaysia's investment development fund, and laundered through financial

15 institutions in several jurisdictions, including the United States, Switzerland,

16 Singapore and Luxembourg. The Government filed the civil forfeiture complaint on

17 the theory that PH1 was purchased by Qusaibi on January 21, 2014 for

18 approximately $50,912,500 with funds traceable to the proceeds of the foregoing

19 criminal activity. PH1 is almost 6,000-square-foot and spans the highest floor of the

20 Walker Tower and is believed to have been the most expensive apartment ever sold

21 in downtown at the time. *See* Response of Claimant Board of Managers to Court's

22 Order to Show Cause re Minor Beneficiaries ("Response to OSC") (Dkt. No. 35).

23    In response, on October 3, 2016, the Board filed a claim wherein it alleged,

24 among other things, that Al Qusaibi had not paid "common charges" on PH1 since

25 May 2016, and that the 'common charges" were continuing to accrue. The Board

26 also duly recorded a "Lien for Common Charges" against PH1. *See* Response to

27 OSC at page 4; *see* also "Statement Identifying Right or Interest of Walker Tower"

28 (Dkt. No.16) and "Answer to Complaint" (Dkt. No. 28).

THEODORA ORINGHER
COUNSELORS AT LAW

1    On May 6, 2020, the parties to the civil forfeiture action filed a "Stipulation
2  and Request to Enter Consent Judgment of Forfeiture." (Dkt. No. 109).  Paragraph
3  16 to the stipulation provides:

4       The Parties stipulate and agree that the Court's entry of the respective
5       [Proposed] Consent Judgment and execution of said Judgment shall constitute
6       the final and complete satisfaction of all claims asserted by the Parties *in this*
7       *action*.  (Emphasis added).

8  The same day, the Court entered a "Consent Judgment of Forfeiture," signed by
9  Judge Dale S. Fischer, which resolved the Board's lien. (Dkt. No. 110). Walker
10 Tower gave up its right to foreclose its lien because the Judgment provided for
11 payment of all outstanding common charges from the proceeds of any future sale of
12 PH1.  The Consent Judgment provides:

13      Upon the sale of the defendant real property, all outstanding real property
14      taxes and condominium/homeowner fees (also known as common charges),
15      late fees, interest charges, and attorneys' fees assessed, billed, incurred or
16      otherwise due to the Board of Managers of Walker Tower from June 1, 2016
17      to the close of escrow shall be paid out of the gross proceeds of the sale….
18      (Consent Judgment ¶ 5.)

19      As a result of the Consent Judgment, the United States became the Unit
20 Owner of the Property.

21      The Board did not offer to give up its right to exercise the ROFR with respect
22 to Mr. Vinder or any other buyers, and the Board was never asked to give up such
23 right.  The ROFR was not raised as part of the Board's claim *in this action*.
24 Accordingly, it comes as no surprise that the Consent Judgment does not discuss
25 Walker Towers' ROFR as provided in the By-Laws of the Condominium because its
26 ROFR was never asserted in the civil forfeiture action, primarily because there was
27 no buyer at the time the stipulation was executed.

28

THEODORA ORINGHER
COUNSELORS AT LAW

**B.     Walker Tower's By-Laws Give Walker Tower a Right of First Refusal**

The By-Laws provide that upon taking title to a Unit, the title holder becomes subject to and must abide by the By-Laws. Article I, Section 1.4 of the By-Laws provides:

> Section 1.4 Application of Residential Bylaws. All present and future Residential Unit Owners, mortgagees, lessees, sublessees and Occupants of Residential Units, and employees and guests of Residential Unit Owners, as well as all other Persons who may use the Residential Section, are and shall be subject to the Declaration, the Condominium Bylaws and the Rules and Regulations annexed thereto, these Residential Bylaws and the Residential Rules and Regulations annexed hereto, as each of the same may be amended from time to time. The acceptance of a deed or other instrument of conveyance, or the succeeding to title to, or the execution of a lease or sublease for, or the act of occupancy of, a Residential Unit shall constitute an agreement that the provisions of the Declaration, the Condominium Bylaws and Rules and Regulations annexed thereto, these Residential Bylaws and the Residential Rules and Regulations annexed hereto, as each of the same may be amended from time to time, are accepted, ratified and will be complied with.

*See* Exhibit A to the Declaration of David A. Kettel ("Kettel Decl.") attached hereto.

When a Unit Owner wishes to sell or transfer a Residential Unit, the Unit Owner must follow the provisions set forth in Article 7 of the By-Laws. Article 7, Section 7.1 provides:

> Section 7.1 General. Subject to the terms contained in Exhibit H to the Declaration and the terms of Section 7.5 hereof, each Residential Unit Owner may (i) sell the Residential Unit and (ii) lease the Residential Unit for periods of not less nor more than 1 year, provided however, no Residential Unit

THEODORA ORINGHER
COUNSELORS AT LAW

1    Owner may sell or lease the Residential Unit except in compliance with the

2    applicable provisions of Exhibit H to the Declaration and this Article 7. Any

3    purported sale or lease consummated in default of the applicable terms hereof

4    shall be voidable at the sole election of the Residential Board, and, if the

5    Residential Board shall so elect, the selling or leasing Residential Unit Owner

6    shall be deemed to have authorized and empowered the Residential Board to

7    institute legal proceedings to eject the purported purchaser (in the event of an

8    unauthorized sale) or to evict the purported tenant (in the event of an

9    unauthorized lease) in the name of such Residential Unit Owner. Such

10   Residential Unit Owner shall reimburse the Residential Board for all costs

11   and expenses paid or incurred in connection with such proceedings, including,

12   without limitation, reasonable attorneys' fees and disbursements and court

13   costs.

14   Article 7, at Section 7.2, gives the Board a ROFR to purchase an apartment

15   that a Unit Owner proposes to sell to a third party. It states in pertinent part.

16   Either the Residential Board or Sponsor, may elect, by sending written notice

17   thereof to the Offeree Residential Unit Owner by certified or registered mail

18   not later than 30 days (in the event of a proposed sale) . . . to purchase such

19   Residential Unit together with its Appurtenant Interests . . . upon the same

20   terms and conditions as were contained in the Sale Agreement . . .

21   The procedures that the selling Unit Owner and the Board must follow are set

22   forth in Section 7.2. The selling Unit Owner must provide notice of the proposed

23   sale to the Board, together with a copy of the fully executed sale agreement. The

24   Board may request additional information regarding the transaction and the parties.

25   Once the notice from the selling Unit Owner is received together with such

26   additional information as may be requested, the Board has thirty (30) days to elect to

27   purchase the Residential Unit or to cause the Unit to be purchased by a designee,

28   corporate or otherwise, on the same terms and conditions as were contained in the

1 sale agreement.

2      The By-Laws also include six (6) exceptions to its ROFR. (By-Laws § 7.5.)

3 However, the By-Laws do not have an exception for an 18 U.S.C. §981 civil

4 forfeiture proceeding, which took place here.

5      **C.      The United States Enters a Sales Contract with Ron J. Vinder at a**

6           **Steep Discount**

7      On May 13, 2020, the Government entered into a Contract of Sale with Ron J.

8 Vinder for the sale of PH1 at a 64% discount for $18,250,000. The Contract of Sale

9 clearly indicates that Mr. Vinder and the Government agreed that PH1 continues to

10 be bound by the By-Laws of the Condominium. (*See* Contract of Sale attached to

11 the Kettel Decl. as Exhibit B, ¶ 1 ("The Unit shall be as designated in the

12 Declaration of Condominium Ownership and By-Laws"), and ¶ 10 ("Purchaser has

13 examined and is satisfied with the Declaration, By-Laws and rules and regulations

14 of the Condominium").

15      Importantly, the Contract of Sale provides, in paragraph 8, that it is "subject

16 to and conditioned upon a waiver of the right of first refusal held by the

17 Condominium and exercised by the Board." *Id*. ¶ 8.

18      On May 22, 2020, the Government submitted to Walker Tower's managing

19 agent, Douglas Elliman Property Management, an application to sell PH1 to Ron

20 Vinder. The application contained the Notice of Intention to Sell ("Sale Notice")

21 (*See* application attached to the Kettel Decl. as Exhibit C).

22      The Sale Notice provides in relevant part:

23      The undersigned represents that the sale or lease described above shall be

24      made strictly in accordance with the provisions of the By-Laws of the

25      Condominium and agrees to promptly deliver to the Board of Managers all

26      such further information with respect to the offer as the Board may

27      reasonably request.

28      The undersigned acknowledges that the Board has a 30 day period,

1    commencing with the date that the Board is in receipt of this notice as well as

2    the delivery of such additional information concerning the offer as the Board

3    may reasonably request, *to exercise its right of first refusal to purchase or*

4    *lease the apartment unit* on the terms specified herein and in the By-Laws.

5    The undersigned hereby requests that, if the Board elects to waive or release

6    such right of first refusal, it deliver to the undersigned a certificate to that

7    effect, pursuant to the provisions of the By-Laws.  (Emphasis added).

8

9    The Sale Notice was signed by Wesley C. Newbold of the U.S. Marshals

10   Service ("USM").

11   On Monday, June 8, 2020, the Board sent notice of its Exercise of the Right

12   of First Refusal and Designation (the "ROFR Notice") to Mr. Newbold and to

13   Michael Strauss, Esq., the USM's attorney handling the proposed sale. The Board

14   informed them that the it was exercising its ROFR of the sale of the Property, and

15   designating Walker Tower PH1 Group, LLC as a designee to purchase the Unit.

16   (*See* ROFR notice attached to the Kettel Decl. as Exhibit D).

17   On June 8, 2020, Walker Tower's counsel David L. Berkey spoke by

18   telephone with Mr. Strauss and advised him the Board was exercising its Right of

19   First Refusal ("ROFR") with respect to PH1 and that Mr. Strauss would be further

20   contacted by the Board's designee to complete the PH1 sale in accordance with the

21   Contract and the ROFR. (*See* Declaration of David L. Berkey, ¶ 3).

22   On Friday, June 12, 2020, the Contract deposit was sent to Mr. Strauss by the

23   Board's designee and the Board and its designee thereafter sought to have a prompt

24   closing of the sale. Unfortunately, that did not occur. (See Berkey Decl., ¶ 4).

25   On Wednesday, June 17, 2020, David L. Berkey spoke with Assistant U.S.

26   Attorney Barbara Levy who told Mr. Berkey that she was taking the position that

27   the Board could not exercise the ROFR because it had given up its right to do so.

28   (See Berkey Decl., ¶ 5).

THEODORA ORINGHER
COUNSELORS AT LAW

**D.      The Government Now Seeks to Unseal the Declarations of Emily Beare and David Kettel**

The Government admits in its application that it originally wanted the subject declarations filed under seal because it was in the process of selling the defendant property and "the disclosure of the potential selling price and other sales information contained in the Declarations could have potentially affected the closing price, and jeopardize the closing, of the defendant property."  (Dkt No. 95, ¶ 4).  That is still the case.  In fact, there are now even more compelling reasons for keeping the subject declarations under seal because of the current dispute and the likelihood that the other Walker Tower condominium owners will lose millions of dollars of equity if PH1 is sold to Mr. Vinder at a price that is substantially below the fair market value.

Moreover, the Government's argument that much of the information related to the potential sales price for PH1 has already been published in the media is simply not true.  In fact, the Government's true motivation for wanting to unseal the subject declarations is to litigate the current dispute in the media and protect itself from further public criticism that it struck a bad deal with Mr. Vinder and, if the current contract closes, it will harm victims who could have recovered more funds had the government done a better job marketing the property and negotiating the sale price after it had rejected several much higher offers in 2019.

**II.      ARGUMENT**

In *In re Intermagnetics America, Inc.*, 101 B.R. 191 (C.D.Cal.1989) then United District Judge Pamela Ann Rymer warned that "[e]x parte applications have reached epidemic proportions in the Central District." Since then, the abusive use of *ex parte* applications has worsened. This abuse is detrimental to the administration of justice and, unless moderated, will increasingly erode the quality of litigation and present ever-increasing problems for the parties, their lawyers, and for the court.

OPPOSITION TO EX PARTE APPLICATION TO UNSEAL DOCUMENTS

1  *Ex parte* applications are rarely justified and have been repeatedly described by the

2  courts as "inherently unfair" and as "pos[ing] a threat to the administration of justice

3  … [and] debilitat[ing] the adversary system." *Mission Power Engineering Co. v.*

4  *Continental Cas. Co.*, 883 F. Supp. 488, 490 (C.D. Cal. 1995).  Although the

5  adversary does have a chance to be heard, the parties' opportunities to prepare are

6  grossly unbalanced. Often, the moving party's papers reflect days, even weeks, of

7  investigation and preparation; the opposing party has perhaps a day or two. *Id*.

8        The failure to satisfy the requirement for "real urgency" is a proper basis for

9  denying a request for emergency relief.  *See*, e.g., *Rainey v. Taylor*, 2019 WL

10  4383958, *2 (C.D. Cal., April 11, 2019); and *DeMichiel v. AEG Live NJ LLC*, 2016

11  WL 11519281, *2 (C.D. Cal., February 11, 2016).  The primary obligation imposed

12  on a party seeking relief on an *ex parte* basis is that the "evidence must show that

13  the moving party's cause will be irreparably prejudiced if the underlying motion is

14  not heard according to regular noticed motion procedures." *Mission Power*, 883 F.

15  Supp. at 492.

16        Despite the foregoing, the Government in this case never articulates any of

17  the following in its application:

18      (1)    Why the Government will be irreparably prejudiced if the underlying

19            motion is not heard on regular notice;

20      (2)    Why "the facts stated in the Declarations are material for purposes of

21            assessing the propriety and merits of the Government's [anticipated]

22            Application to Enforce" (*see* Application at page 2); or

23      (3)    Why the original reasons for sealing the Declarations are no longer

24            valid considering no sale has been consummated.

25  These unanswered questions alone constitute strong reasons for denying the

26  Government's Application.  And when coupled with the Government's admitted

27  desire to extinguish the Board's ROFR which will likely harm victims as well as

28  other innocent Walker Tower condominium owners, it is clear that the relief the

1    Government is seeking is inappropriate.

2        **III.    <u>CONCLUSION</u>**

3        For the foregoing reasons, the Board respectfully submits that the

4    Government's Application should be denied.

5

6    DATED:  June 29, 2020            THEODORA ORINGHER PC

7

8

9                                    By:    /s/ David A. Kettel

10                                          David A. Kettel
                                            Attorneys for Claimant BOARD
11                                          MANAGERS OF THE WALKER
                                            TOWER CONDOMINIUM, aka
12                                          RESIDENTIAL SECTION OF THE
                                            WALKER TOWER CONOMINIUM
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28