David A. Kettel, Esq. (State Bar No.125745)
dkettel@tocounsel.com
THEODORA ORINGHER PC
1840 Century Park East, Suite 500
Los Angeles, California 90067-2120
Telephone: (310) 557-2009
Facsimile: (310) 551-0283

Attorneys for Claimant THE BOARD OF
MANAGERS OF THE WALKER
TOWER CONDOMINIUM

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>REAL PROPERTY LOCATED IN NEW YORK, NEW YORK,<br><br>Defendant. | Case No. CV-16-5376-DSF-PLA<br><br>**EX PARTE APPLICATION FOR DECLATORY RELIEF; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>[Filed Concurrently With Declarations of Penelope Marzulli and David A. Kettel] |
| BOARD OF MANAGERS OF THE WALKER TOWER CONDOMINIUM, aka RESIDENTIAL SECTION OF THE WALKER TOWER CONDOMINIUM,<br><br>Claimant. | |

*EX PARTE APPLICATION FOR DECLARATORY RELIEF*

1

## **TABLE OF CONTENTS**

Page

MEMORANDUM OF POINTS AND AUTHORITIES ........................................... 7

I.   STATEMENT OF FACTS........................................................................ 7

  A.   Walker Tower's By-laws Give the Board a Right of First Refusal........ 9

  B.   The United States Enters a Sales Contract with Ron J. Vinder at a Steep Discount ...................................................................... 11

II.   ARGUMENT ........................................................................................ 14

  A.   A Substantial Controversy Exists Between the Board and the Government, With Adverse Legal Interests, to Warrant Declaratory Relief............................................................................ 14

  B.   The Business Judgment Rule Bars Inquiry Into the Board's Exercise of Its ROFR ...................................................................... 20

III.   CONCLUSION ..................................................................................... 21

*EX PARTE APPLICATION FOR DECLATORY RELIEF*

# TABLE OF AUTHORITIES

**Page**

## CASES

*Abrams v. Bd. of Managers of 25 Beekman Place Condominium*, No. 154144/2018, 2019 WL 1115727 (N.Y. Sup. Ct. Mar. 11, 2019) ................. 18

*Brillhart v. Excess Ins. Co.*, 316 U.S. 491, 62 S.Ct. 1173 L.Ed. 1620 (1942) ...................................... 15, 16

*Golden v. California Emergency Physicians Med. Grp.*, 782 F.3d 1083 (9th Cir. 2015) .......................................................... 15

*Gov't Employees Ins. Co. v. Dizol*, 133 F.3d 1220 (9th Cir. 1998) ................................................................ 16

*Hollywood Foreign Press Ass'n v. Red Zone Capital Partners II*, 870 F. Supp. 2d 881, 2012 WL 1549838 (C.D. Cal. 2012) .......................... 16

*Lamden v. La Jolla Shores Clubdominium Homeowners Assn.*, 21 Cal. 4th 249, 980 P.2d 940, 942 (Cal. 1999) ................................. 20

*Levandusky v. One Fifth Ave. Corp.*, 75 N.Y.2d 530 (N.Y. 1990) ................................................................ 20

*Maryland Cas. Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 61 S.Ct. 510, 85 L.Ed. 826 (1941) ............................ 15

*Pacheco v. Serendensky*, 393 F.3d 348 (2d Cir. 2004) .............................................................. 18, 19

*Principal Life Ins. Co. v. Robinson*, 394 F.3d 665, 05 Cal. Daily Op. Serv. 140, 2005 Daily Journal D.A.R. 195, 2004 WL 3052453 (9th Cir. 2005) ........................................ 15

*United States v. Gross*, 482 Fed.Appx. 252(9th Cir. 2012) .................................................. 18

*United States v. Harris*, 246 F.3d 566 (6th Cir. 2001) ................................................................ 19

*United States v. Lavin*, 942 F.2d 177 (3d Cir. 1991) .......................................... 19

*Whittaker Corp. v. AIG Specialty Ins. Co.*, No. 2:18-CV-08453-AB-PLA, 2019 WL 517629 (C.D. Cal. Feb. 6, 2019) ............................................................................ 15, 16

## STATUTES

18 U.S.C. §981 ........................................................................................ 10

THEODORA ORINGHER
COUNSELORS AT LAW

1    28 U.S.C § 2201.................................................................................. 14

2    IRS Code § 1146, title 11r............................................................... 14

3    IRS Code § 505 (1986).................................................................... 14

4    IRS Code § 7428 (1986).................................................................. 14

5

6    **OTHER AUTHORITIES**

7    516A(f)(10) of the Tariff Act of 1930.............................................. 14

8    N.Y. Real Prop. Law § 339-j ........................................................... 16

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

THEODORA ORINGHER
COUNSELORS AT LAW

Claimant the Residential Board of Managers of Walker Tower Condominium ("the Board"), by and through its attorneys, Theodora Oringher PC hereby applies to this Court *ex parte* for an order (1) declaring that the Judgment of Forfeiture stipulated to in this case did not affect the Board's rights pursuant to the Walker Tower Condominium By-Laws to exercise its right of first refusal ("ROFR") and designate a purchaser of Penthouse 1 ("PH1") in the Walker Tower condominium building to close on the purchase of PH1 in accordance with the contract terms presented by the Government to the Board for review; (2) ordering the Government, acting through the United States Marshals Service, to close on the sale of PH1 with the Board's designee, Walker Tower PH1 Group, LLC; and (3) granting the Board such other and further relief as the Court deems proper.  A proposed order granting the requested relief is being lodged concurrently with this application.

On June 29, 2020, counsel for the Board notified the Government of its intention to file this ex parte application.  On July 1, 2020 the Government indicated it would be opposing the Board's intended application.

Counsel for the Government are Woo S. Lee and Barbara Y. Levy, United States Department of Justice, 1400 New York Avenue, N.W., 10th Floor, Washington, D.C. 20530, Telephone (202) 514-1263, E-mails: Woo.Lee@usdoj.gov and Barbara.Levy@usdoj.gov, and John J. Kucera and Michael Sew Hoy, Assistant United States Attorneys, 312 N. Spring Street, 14th Floor, Los Angeles, California 90012, Telephone (213) 894-3391/3314, E-mails: John.Kucera@usdoj.gov and Michael.R.Sew.Hoy@usdoj.gov.

On July 1, 2020, counsel for the Board notified counsel for claimants 212 West 18th Street LLC, Atlantic Property Trust, and Minor Children Beneficiaries, through their guardian Safeya Ahmed Kulaib Al Hameli (collectively, the Qubaisi Claimants") of the Board's intention to file this ex parte application, despite the fact that the Qubaisi Claimants have no interest in the current dispute between the Board

*EX PARTE APPLICATION FOR DECLARATORY RELIEF*

1  and the Government. The Qubaisi Claimants, through their counsel, indicated they

2  are not taking any position.

3      Counsel for the Qubaisi Claimants are: Sharie A. Brown, Troutman Sanders

4  LLP, 401 9th Street, NW, Suite 1000, Washington, D.C. 20004-2134, Telephone:

5  (202) 274-2950, E-mail: sharie.brown@troutmansanders.com and Peter N. Villar,

6  Troutman Sanders LLP, 5 Park Plaza, Suite 1400, Irvine, CA 92614, Telephone:

7  (949) 622-2700, E-mail: peter.villar@troutmansanders.com.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*EX PARTE APPLICATION FOR DECLARATORY RELIEF*

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.     STATEMENT OF FACTS**

The current dispute arises out of the Board's assertion of its ROFR over the pending sale of PH1 that the United States acquired pursuant to the stipulated forfeiture judgment in this action (Exhibits A and B and Docket Nos. 109 and 110) to Ron J. Vinder.

On July 20, 2016, the United States filed a civil forfeiture action against the defendant real property (PH1) in connection with the Malaysian 1MDB corruption scandal, whereby Khadem al-Qubaisi used funds allegedly misappropriated from 1Malaysia Development Berhad, Malaysia's investment development fund, and laundered through financial institutions in several jurisdictions, including the United States, Switzerland, Singapore and Luxembourg. The United States brought this action in order to forfeit to the Government property traceable to the proceeds of these crimes which included PH1, which was purchased by Qusaibi on January 21, 2014 for approximately $50,912,500. An almost 6,000-square-foot penthouse spanning the highest flooring of the Walker Tower offered Condominium, the Property is believed to have been the most expensive apartment ever sold in downtown at the time. (*See* the Board's Response to the Court's Order to Show Cause ("Response to OSC") (Dkt. No. 35, at page 4).[1]

In response, on October 3, 2016, the Board filed a claim providing notice that Al Qusaibi had not paid "common charges" on the property since May 2016, which continue to accrue.  Accordingly, the Board duly recorded a "Lien for Common Charges" against the defendant property. (*See* Response to OSC at page 4; *see also*

---

[1] *See also* https://www.mansionglobal.com/articles/the-justice-department-inked-a-deal-to-sell-1mdb-penthouse-for-64-off-the-condo-board-is-fighting-back-140329; https://www.justice.gov/opa/pr/united-states-reaches-settlement-recover-more-49-million-involving-malaysian-sovereign-wealth.

THEODORA ORINGHER
COUNSELORS AT LAW

"Statement Identifying Right or Interest of Walker Tower" (Dkt. No. 16) and "Answer to Complaint" (Dkt. No. 28).

On May 6, 2020, the parties to this action filed a "Stipulation and Request to Enter Consent Judgment of Forfeiture." (Exhibit B and Docket No. 109).  The same day, the Court entered a "Consent Judgment of Forfeiture," which resolved the Board's lien. (*See* Consent Judgment, attached to the Declaration of Penny B. Marzulli ("Marzulli Decl.") as Exh. A and Dkt. No. 110).  The Board gave up its right to foreclose its lien because the Judgment provided for payment of all outstanding common charges from the proceeds of any future sale of PH1. (Marzulli Decl. ¶ 8.) The Consent Judgment provides, at 5:

> Upon entry of this Consent Judgment, all right, title, and interest of . . . the Board of Managers of Walker Tower in the defendant real property shall be forfeited to the United States, and no other right, title, or interest shall exist therein, unless otherwise provided in this Order.

As a result of the Consent Judgment, the United States also became the Unit Owner of PH1.

The "Stipulation and Request to Enter Consent Judgment of Forfeiture" (Exhibit B/Dkt. No. 109) was clear that only claims that were asserted in this action were satisfied by the Judgment of Forfeiture.  Specifically, it provides the following:

> The Parties stipulate and agree that the Court's entry of the respective [Proposed] Consent Judgment and execution of said Judgment shall constitute the final and complete satisfaction of all claims asserted by the Parties *in this action*.  (Emphasis added).

The Board did not offer to give up its right to exercise the ROFR with respect to the proposed sale to Mr. Vinder, and the Board was never asked to give up such right. (Marzulli Decl. ¶ 30).  The ROFR was not raised as part of the Board's claim in the civil forfeiture action. Accordingly, it is not surprising that the Consent

Judgment does not discuss the Board's ROFR as provided in the By-Laws of the Condominium.

### A.   Walker Tower's By-laws Give the Board a Right of First Refusal

The By-Laws provide that upon taking title to a Unit, the title holder becomes subject to and must abide by the By-Laws. (Attached to the Marzulli Decl. as Exh. C; *see* Marzulli Decl. ¶ 9.) Article I, Section 1.4 of the By-Laws provides:

> Section 1.4 *Application of Residential Bylaws.* All present and future Residential Unit Owners, mortgagees, lessees, sublessees and Occupants of Residential Units, and employees and guests of Residential Unit Owners, as well as all other Persons who may use the Residential Section, are and shall be subject to the Declaration, the Condominium Bylaws and the Rules and Regulations annexed thereto, these Residential Bylaws and the Residential Rules and Regulations annexed hereto, as each of the same may be amended from time to time. The acceptance of a deed or other instrument of conveyance, or the succeeding to title to, or the execution of a lease or sublease for, or the act of occupancy of, a Residential Unit shall constitute an agreement that the provisions of the Declaration, the Condominium Bylaws and Rules and Regulations annexed thereto, these Residential Bylaws and the Residential Rules and Regulations annexed hereto, as each of the same may be amended from time to time, are accepted, ratified and will be complied with.

When a Unit Owner wishes to sell or transfer a Residential Unit, the Unit Owner must follow the provisions set forth in Article 7 of the By-Laws. (Marzulli Decl. ¶ 10.) Article 7, Section 7.1 provides:

> Section 7.1 *General.* Subject to the terms contained in Exhibit H to the Declaration and the terms of Section 7.5 hereof, each Residential Unit Owner may (i) sell the Residential Unit and (ii) lease the Residential Unit for periods of not less nor more than 1 year, provided however, no Residential Unit Owner may sell or lease the Residential Unit except in compliance with the applicable provisions of Exhibit H to the Declaration and this Article 7. Any purported sale or lease consummated in default

*EX PARTE APPLICATION FOR DECLARATORY RELIEF*

THEODORA ORINGHER
COUNSELORS AT LAW

> of the applicable terms hereof shall be voidable at the sole election of the Residential Board, and, if the Residential Board shall so elect, the selling or leasing Residential Unit Owner shall be deemed to have authorized and empowered the Residential Board to institute legal proceedings to eject the purported purchaser (in the event of an unauthorized sale) or to evict the purported tenant (in the event of an unauthorized lease) in the name of such Residential Unit Owner. Such Residential Unit Owner shall reimburse the Residential Board for all costs and expenses paid or incurred in connection with such proceedings, including, without limitation, reasonable attorneys' fees and disbursements and court costs.

Article 7, at Section 7.2, gives the Board a ROFR to purchase an apartment that a Unit Owner proposes to sell to a third party. It states in pertinent part.

> Either the Residential Board or Sponsor, may elect, by sending written notice thereof to the Offeree Residential Unit Owner by certified or registered mail not later than 30 days (in the event of a proposed sale) . . . to purchase such Residential Unit together with its Appurtenant Interests . . . upon the same terms and conditions as were contained in the Sale Agreement . . .

The procedures that the selling Unit Owner and the Board must follow are set forth in Section 7.2. The selling Unit Owner must provide notice of the proposed sale to the Board, together with a copy of the fully executed sale agreement. The Board may request additional information regarding the transaction and the parties. Once the notice from the selling Unit Owner is received together with such additional information as may be requested, the Board has thirty (30) days to elect to purchase the Residential Unit or to cause the Unit to be purchased by a designee, corporate or otherwise, on the same terms and conditions as were contained in the sale agreement. (Decl. ¶¶ 11-12.)

The By-Laws also include six (6) exceptions to its ROFR. (By-Laws § 7.5.) However, the By-Laws do not have an exception for an 18 U.S.C. §981 civil forfeiture proceeding, which took place here.

**B.**   **The United States Enters a Sales Contract with Ron J. Vinder at a Steep Discount**

On May 13, 2020, the Government entered into a Contract of Sale with Ron J. Vinder, selling the Unit at a 64% discount from its prior sales price. (*See* Contract of Sale, attached to the Marzulli Decl. as Exh. E).  The Contract of Sale also indicates agreement that the Unit continues to be bound by the By-Laws of the Condominium. (*See* Contract of Sale ¶ 1 ("The Unit shall be as designated in the Declaration of Condominium Ownership and By-Laws") and ¶ 10 ("Purchaser has examined and is satisfied with the Declaration, By-Laws and rules and regulations of the Condominium")).

Importantly, that the Contract of Sale provides, in paragraph 8, that it is "subject to and conditioned upon a waiver of the right of first refusal held by the Condominium and exercised by the Board." *Id.* ¶ 8.

On May 22, 2020, the USM submitted to Walker Tower's managing agent, Douglas Elliman Property Management, an application to sell PH1 to Ron Vinder. (Marzulli Decl. ¶ 13.) The application contained the Notice of Intention to Sell ("Sale Notice"), which is the first document required as part of the ROFR process. (Attached to the Marzulli Decl. as Exh. D.)

The Sale Notice provides in relevant part:

> The undersigned represents that the sale or lease described above shall be made strictly in accordance with the provisions of the By-Laws of the Condominium and agrees to promptly deliver to the Board of Managers all such further information with respect to the offer as the Board may reasonably request.

> The undersigned acknowledges that the Board has a 30 day period, commencing with the date that the Board is in receipt of this notice as well as the delivery of such additional information concerning the offer as the Board may reasonably request, to exercise its right of first refusal to purchase or lease the apartment unit on the terms specified herein and in the By-

> Laws. The undersigned hereby requests that, if the Board elects to waive or release such right of first refusal, it deliver to the undersigned a certificate to that effect, pursuant to the provisions of the By-Laws.

The Sale Notice was signed by Wesley C. Newbold, the USM official who signed the Contract. Shortly after submitting the application and Sale Notice, the USM submitted a fully executed copy of the Contract to the Board for review. (Marzulli Decl. ¶ 15.)

The Board reviewed the Contract and learned that the proposed sales price for PH1 was $18,250,000.00. That amount was substantially below the fair market value for PH1. (*Id.* ¶ 17.)

When the offering plan to create Walker Tower Condominium was declared effective, the sponsor offered to sell PH1 to the public for $55 million. (*Id.* ¶ 18.) The 18th Amendment to the Walker Tower offering plan, dated September 3, 2013, listed PH1 at the sale price of $55 million. (Attached to the Marzulli Decl. as Exh. F is a copy of Schedule A attached to the 18th Amendment to the offering plan).

Neil Moffitt, CEO of Hakkasan Group, purchased the 6,000-square-foot penthouse in 2013 for $50.9 million. In 2015, PH1 was offered for sale for $70 million. (Marzulli Decl. ¶ 19).

When the Board learned that PH1 was contracted to be sold for $18.25 million, the Board, shocked at the low price, determined to do all that it could to preserve the market value of PH1 and all other Units in the Condominium by exercising the ROFR and immediately relisting the Unit at a price that they believed was close to market value. (*Id.* ¶ 20).

The Board acted in accordance with its By-Laws and obtained the consent of more than a majority of its Unit Owners to exercise the ROFR. (*Id.* ¶ 21).

The Board determined that the safest way to exercise its ROFR and achieve its goal was to find a party willing to stand in for the Board and complete the purchase in accordance with the USM Contract. That party would be designated by

*EX PARTE APPLICATION FOR DECLARATORY RELIEF*

the Board to purchase PH1, would relist it close to its original sales price, and possibly pay a fee to the Board for the designation as ROFR purchaser. (*Id.* ¶ 22).

On Friday, June 5, 2020, the Board entered into an Exercise and Designation Agreement ("EDA") with Walker Tower PH1 Group, LLC. The EDA provided that the Board would exercise its ROFR and designate Walker Tower PH1 Group, LLC as its designee to purchase PH1 from the USM in accordance with the Contract. The designee was obligated to immediately list PH1 for sale at $45 million. The designee also agreed to pay to the Board a designation fee of $2.5 million for the right to be its designee. (*See Id.* ¶ 23; EDA attached to the Marzulli Decl. as Exh. G.)

On Monday, June 8, 2020, the Board sent notice of its Exercise of the Right of First Refusal and Designation (the "ROFR Notice") to Mr. Newbold and to Michael Strauss, Esq., the USM's attorney handling the proposed sale (attached to the Marzulli Decl. as Exh. H).  The Board informed them that the it was exercising its ROFR of the sale of the Property, and designating Walker Tower PH1 Group, LLC as a designee to purchase the Unit. (Marzulli Decl. ¶ 24.)

Walker Tower's counsel called Mr. Strauss and advised him of the ROFR exercise and designation, and that Mr. Strauss would be contacted by the designee's counsel to complete the PH1 sale in accordance with the Contract. (*Id.* ¶ 25.)

On Friday, June 12, 2020, the designee's counsel sent the Contract deposit to Mr. Strauss and thereafter sought to have a prompt closing of the sale. (*Id.* ¶ 26.)

Unfortunately, that did not occur. On Wednesday, June 17, 2020, the Board's counsel, David L. Berkey, spoke with Barbara Levy, counsel for the Government in the Forfeiture Action. Ms. Levy told Mr. Berkey that she was taking the position that the Board could not exercise the ROFR because it had given up its right to do so in the Forfeiture Action. (*Id.* ¶ 27.)

*EX PARTE APPLICATION FOR DECLARATORY RELIEF*

## II.    **ARGUMENT**

### A.    **A Substantial Controversy Exists Between the Board and the Government, With Adverse Legal Interests, to Warrant Declaratory Relief**

The Board seeks, among other things, a declaratory judgment that the Consent Judgment does not preclude the Board from exercising its ROFR.  The Board respectfully submits that this case is ripe for adjudication, that the Court should assert jurisdiction over the declaratory claim, and grant the declaratory relief requested in the Board's favor.

The requested order is especially appropriate here because both the Government and the Board believe a declaratory judgment is appropriate as evidenced by the stipulation sent to the Board's counsel wherein the Government agreed not to close with its original purchaser until the Court clarified the effect of its Judgment on the Board's right to exercise its ROFR with respect to the proposed sale. (*See* Exhibit I attached to Declaration of David A. Kettel).

28 U.S.C § 2201 provides, in pertinent part:

> (a)    In a case of actual controversy within its jurisdiction, except with respect to Federal taxes other than actions brought under section 7428 of the Internal Revenue Code of 1986, a proceeding under section 505 or 1146 of title 11r in any civil action involving an antidumping or countervailing duty proceeding regarding a class or kind of merchandise of a free trade area country (as defined in section 516A(f)(10) of the Tariff Act of 1930), as determined by the administering authority, any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

The Ninth Circuit has held that before passing on the issue in dispute, the district court must first inquire whether there is an actual case or controversy within its jurisdiction.  Second, if the court finds that an actual case or controversy exists,

THEODORA ORINGHER
COUNSELLORS AT LAW

1  the court must decide whether to exercise its jurisdiction by analyzing the factors set

2  out in *Brillhart v. Excess Ins. Co.*, 316 U.S. 491, 62 S.Ct. 1173, 86 L.Ed. 1620

3  (1942). *See Principal Life Ins. Co. v. Robinson*, 394 F.3d 665, 669, 05 Cal. Daily

4  Op. Serv. 140, 2005 Daily Journal D.A.R. 195, 2004 WL 3052453 (9th Cir. 2005);

5  *Whittaker Corp. v. AIG Specialty Ins. Co.*, No. 2:18-CV-08453-AB-PLA, 2019 WL

6  517629, at *7 (C.D. Cal. Feb. 6, 2019).

7       An actual case or controversy exists where the contract dispute is "ripe" for

8  adjudication. The Ninth Circuit has acknowledged that "the appropriate standard for

9  determining ripeness of private party contract disputes is the traditional ripeness

10  standard, namely, whether "there is a substantial controversy, between parties

11  having adverse legal interests, of sufficient immediacy and reality to warrant the

12  issuance of a declaratory judgment." Id. quoting *Maryland Cas. Co. v. Pacific Coal*

13  *& Oil Co.*, 312 U.S. 270, 273, 61 S.Ct. 510, 85 L.Ed. 826 (1941); *see also Golden v.*

14  *California Emergency Physicians Med. Grp.*, 782 F.3d 1083, 1087 (9th Cir. 2015)

15  (applying the traditional standard of ripeness to actions to enforce a settlement

16  agreement); *Whittaker Corp.*, 2019 WL 517629, at *7 (applying the traditional

17  standard of ripeness to a contractual dispute).

18       The contractual dispute between the Government and the Board over whether

19  the Consent Judgment precludes the Board from exercising its ROFR is not a

20  hypothetical disagreement.  This is a typical contract dispute under which the

21  parties' interests are clearly adverse, and a decision will have an immediate impact

22  upon whether the proposed sale of PH1 to the Board's designee or to Mr. Vinder

23  closes in the coming days (not weeks).  Indeed, the Contract of Sale was originally

24  due to close on June 30, 2020.

25       The *Brillhart* factors also weigh in favor of the Court using its discretion to

26  exercise its jurisdiction over the declaratory judgment claim.  On the whole, the

27  district court 'must balance concerns of judicial administration, comity, and fairness

28  to the litigants. *Robinson*, 394 F.3d at 672.  The *Brillhart* factors are non-exclusive

THEODORA ORINGHER
COUNSELORS AT LAW

*EX PARTE APPLICATION FOR DECLARATORY RELIEF*

1   and state that, "[t]he district court should avoid needless determination of state law

2   issues; it should discourage litigants from filing declaratory actions as a means of

3   forum shopping; and it should avoid duplicative litigation." *Gov't Employees Ins.*

4   *Co. v. Dizol*, 133 F.3d 1220, 1225 (9th Cir. 1998).  Additional considerations

5   include "whether the declaratory action will settle all aspects of the controversy"

6   and "whether the declaratory action will serve a useful purpose in clarifying the

7   legal relations at issue" Id. at 1225 n. 5.  See *Whittaker Corp.*, 2019 WL 517629, at

8   *8 (performing analysis using the *Brillhart* factors.); *Hollywood Foreign Press*

9   *Ass'n v. Red Zone Capital Partners II*, 870 F. Supp. 2d 881, 916, 2012 WL 1549838

10  (C.D. Cal. 2012) (finding a judicial controversy and declaratory relief appropriate

11  where the relief would clarify and settle the parties' rights and obligations under an

12  agreement).

13      Here, the Court's evaluation should involve a straightforward analysis of the

14  Consent Judgment and the By-Laws without infringing on novel state law issues.

15  This Court has sole discretion over the Consent Judgment, thus this action does not

16  implicate concerns regarding forum shopping, duplicative litigation, or

17  entanglement with state court litigation. Finally, this declaratory action will settle all

18  aspects of the controversy as it relates to the civil forfeiture action and PH1, and is

19  necessary to clarify the legal relationship and rights between the Government and

20  the Board.

21      Because there is an actual controversy here, and the *Brillhart* factors weigh

22  heavily in favor of exercising jurisdiction, the Court should exercise jurisdiction

23  over the Board's declaratory relief claim.

24      Here, the Government is acting in contravention of the By-Laws, to which it

25  is bound as a unit owner, see By-laws Article I, §1.4, by attempting to consummate

26  the sale of property even though Walker Tower has asserted its ROFR. *See also*

27  N.Y. Real Prop. Law § 339-j ("Each unit owner shall comply strictly with the by-

28  laws and with rules, regulations, resolutions and decisions adopted pursuant thereto.

1  Failure to comply with any of the same shall be ground for an action to recover
2  sums due, for damages or injunctive relief or both maintainable by the board of
3  managers on behalf of the unit owners."). The United States is, therefore, in breach
4  of Article VII Section 7.2 of the By-Laws. Our attorneys have assured us that the
5  Government as the Unit Owner is bound by the WTC By-Laws and should not be
6  permitted to act contrary to the By-Laws provisions that establish the Board's
7  ROFR.  The Government's claim that it does not have to follow our By-Laws is
8  preposterous.  It would mean that the Government does not have to follow our By-
9  Law provisions concerning use and occupancy of Units, alterations of Units, leasing
10  of Units, our prohibition against altering Common Areas, and our Rules and
11  Regulations adopted pursuant to our By-Laws which implement special Covid-19
12  protections for all Unit Owners.  To put it simply, the Government has no special
13  exemption from following our By-Laws.

14      The ROFR was not waived by the Stipulation or the Consent Judgment. The
15  Consent Judgment solely addresses the Board's lien on the property for common
16  charges—*which was the sole basis for Walker Tower's claim in the forfeiture*
17  *proceeding*. Nowhere does the Consent Judgment discuss the Board's ROFR or the
18  status of any future sales of the Property—because there was no contract to sell PH1
19  when the Consent Judgment was signed and filed, and no notice of sale or contract
20  of sale was presented to the Board for its consideration. And the Board was neither
21  asked to waive its ROFR, nor did it ever offer or agree to do so.  Moreover,
22  paragraph 16 to the "Stipulation and Request to Enter Consent Judgment of
23  Forfeiture" (Exhibit B/Dkt. No. 109) provides:

24      The Parties stipulate and agree that the Court's entry of the respective
25      [Proposed] Consent Judgment and execution of said Judgment shall constitute
        the final and complete satisfaction of all claims asserted by the Parties *in this*
26      *action*.  (Emphasis added).
27
28

1  Thus, all other rights granted to the Board by the By-Laws and all other obligations
2  of Unit Owners imposed by the By-Laws remain in effect.

3       The United States makes the dubious claim—without evidence—that when
4  the Board stipulated to the recovery of its common charges in the forfeiture action,
5  the Board intended to give up its valuable ROFR of future sales of the property—a
6  right which is exceedingly more valuable than the common charges, and crucial for
7  the Board to comply with its fiduciary obligation to preserve the value of the
8  building. *See Abrams v. Bd. of Managers of 25 Beekman Place Condominium*, No.
9  154144/2018, 2019 WL 1115727, at *2 (N.Y. Sup. Ct. Mar. 11, 2019) (sustaining
10 cause of action against the board of a condominium for breach of fiduciary duty for
11 breaching its obligation to preserve the value of the Unit, and failing to protect the
12 Unit from nuisances which lessened the values of the Unit and the Building.) This
13 purported bargain defies belief, is not supported by any documentation since the
14 ROFR is not mentioned in the civil forfeiture proceeding at all, and such a waiver
15 would be in breach of the Board's fiduciary duty to preserve the value of the
16 property and would need to be expressly stated since the ROFR is an important right
17 for Boards to control prospective sales in condominium buildings.

18      Indeed, federal courts have acknowledged the necessity of carefully
19 partitioning forfeited property to even allow for the "partial forfeiture" of property
20 to account for the rights of innocent third parties.  To do otherwise would grant the
21 Government an undeserved windfall of an innocent third-parties' interests. *See*
22 *United States v. Gross*, 482 Fed.Appx. 252, at *3 (9th Cir. 2012)(acknowledging
23 that in a civil forfeiture proceeding (and in criminal forfeiture proceedings), property
24 is forfeited subject to third party interests. "Thus, when the defendant owns real
25 property with innocent others, the statute may require a partial forfeiture."*);
26 *Pacheco v. Serendensky*, 393 F.3d 348, 355 (2d Cir. 2004)(acknowledging the
27 ability in a civil forfeiture to permit partial forfeitures so that the government
28 doesn't receive a windfall of a third party's interest in a property).

THEODORA ⚖ ORINGHER
COUNSELORS AT LAW

With civil and criminal forfeiture statutes, Congress intended to vest in the government the same substantive rights, despite their technical differences. *See Pacheco*, 393 F.3d at 355 ("we join those circuits that have recognized Congress' intention to vest in the government the same substantive rights under the two statutes, notwithstanding their technical differences"). Accordingly, cases in the criminal forfeiture context are instructive to the extent that, like here, a criminal defendant whose actions were that basis for the forfeiture owned the forfeited property. Under those circumstances, and as a matter of general fairness, federal courts have acknowledged that the Government cannot acquire better title that what the prior owner had. *See United States v. Harris*, 246 F.3d 566, 575-76 (6th Cir. 2001)("the government steps into the shoes of the defendant acquiring only the rights of the defendant at the time of the criminal acts, and nothing more."); *United States v. Lavin*, 942 F.2d 177, 185 (3d Cir. 1991) ("Thus, if a third party's interest in the forfeited property, at the time of the criminal acts, was superior to the criminal defendant's interest, then the interest that the government acquires when it steps into the defendant's shoes is subordinate to that of the third party.")

Should the Government succeed in consummating the sale to Mr. Vinder, in breach of the By-laws, the damages to the Condominium would include the incalculable diminution in value of the ***all*** of the Units in the Condominium. A sale that is made at less than 40% of market value will devalue the Units owned by other WTC residents by tens of millions of dollars. (Marzulli Decl. ¶ 30.) The contract price can solely be described as steeply distressed and unrealistic and one which might adversely have an effect on the market worth of different houses at Walker Tower. Such a depressed sale has the potential of sending the market a harmful message about the value of the entire property and adversely affecting Unit owners who never knew and had nothing to do with Qusaibi's crimes.

**B.**     **The Business Judgment Rule Bars Inquiry Into the Board's Exercise of Its ROFR**

With all due respect, the Court may not interfere with the Board's decision to exercise its ROFR.  Under New York law, "[s]o long as the board acts for the purposes of the cooperative [or condominium], within the scope of its authority and in good faith, courts will not substitute their judgment for the board's. Stated somewhat differently, unless a resident challenging the board's action is able to demonstrate a breach of this duty, judicial review is not available." *Levandusky v. One Fifth Ave. Corp.*, 75 N.Y.2d 530, 538 (N.Y. 1990) (emphasis added); *See also Lamden v. La Jolla Shores Clubdominium Homeowners Assn.*, 21 Cal. 4th 249, 253, 980 P.2d 940, 942 (Cal. 1999)  (California Supreme Court held that decisions of community association boards in its discretion are subject to deference, citing the business judgment rule as formulated by *Levandusky*).

Here, the business judgment rule shields the Board's exercise of its ROFR from judicial review.  The Board exercised the ROFR in a good faith effort to comply with its fiduciary duty to preserve the values of all Residential Units in the building for the benefit of all Unit Owners. As explained by Ms. Marzulli, a sale that is made at less than 40% of market value will devalue the Units owned by WTC residents by tens of millions of dollars. (Marzulli Decl. ¶ 32).

When the Board exercised the ROFR, it acted within the scope of its authority under Article VII Section 7.2 of the By-Laws (granting the ROFR), and consistently with Article I Section 1.4 of the By-Laws (obligating each unit owner to comply with the by-laws), and paragraph 8 of the Contract of Sale (acknowledging that the Contract is "subject to and conditioned upon a waiver of the right of first refusal held by the Condominium and exercised by the Board.").

Accordingly, this Court should not second-guess the Board and should instead direct the USM to close the sale of PH1 with the Board's designee.

## III.   <u>CONCLUSION</u>

For the foregoing reasons, the Board respectfully submits that the Court should grant the application for the requested order (1) declaring that the Judgment of Forfeiture stipulated to in this case did not affect the Board's rights pursuant to the Walker Tower Condominium By-Laws to exercise its right of first refusal ("ROFR") and designate a purchaser of Penthouse 1 ("PH1") in the Walker Tower condominium building to close on the purchase of PH1 in accordance with the contract terms presented by the Government to the Board for review; (2) ordering the Government, acting through the USM, to close on the sale of PH1 with the Board's designee, Walker Tower PH1 Group, LLC; and (3) granting the Board such other and further relief as the Court deems proper.

DATED:  July 2, 2020                    THEODORA ORINGHER PC


By:    /s/ David A. Kettel
       David A. Kettel
       Attorneys for Claimant
       THE BOARD OF MANAGERS OF THE
       WALKER TOWER CONDOMINIUM