# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>    Plaintiff,<br><br>            v.<br><br>REAL PROPERTY LOCATED IN NEW YORK, NEW YORK,<br>    Defendant. | CV 16-5376 DSF (PLAx)<br><br>Order GRANTING Motion to Enforce Judgment (Dkt. No. 116) |

    The United States has moved to enforce the Consent Judgment in this case. The government seeks an order that Claimants the Board of Managers of the Walker Tower Condominium (the Board) has no right of first refusal (ROFR) regarding a sale of the Property at issue in this civil forfeiture case. The Court deems this matter appropriate for decision without oral argument. See Fed. R. Civ. P. 78; Local Rule 7-15. The hearing set for August 3, 2020 is removed from the Court's calendar.

    There is no dispute that, in the typical case, the Board possesses a ROFR with respect to a unit sold within the Walker Tower Condominium. This right is conveyed in the Condominium's bylaws. Neither the Judgment nor the stipulation between the parties filed with the proposed judgment explicitly addresses the ROFR.

    The government argues that the Judgment nonetheless extinguished the ROFR. The two most relevant provisions of the Judgment are as follows:

> Upon entry of this Consent Judgment, all right, title, and interest of the Qubaisi Claimants and the Board of Managers of Walker Tower in the defendant real property shall be forfeited to the United States, and no other right, title, or interest shall exist therein, unless otherwise provided in this Order.
>
> . . .
>
> The Claimants, and each of them, shall not contest or assist any other individual or entity in contesting the forfeiture of the defendant real property or proceeds of its sale.

Judgment ¶¶ 8, 13.

The primary question is whether the ROFR is a "right, title, or interest" in the Property for the purposes of the Judgment. The Court finds that it is.

The ROFR is, as the name suggests, a "right" related to the Property and could potentially also be thought to be an "interest" in the Property. The ROFR directly implicates the government's ability to sell the Property and remit those funds to the proper recipients, *e.g.*, the Malaysian government. In this way, the ROFR is different from other aspects of the bylaws that do not give the Board an ability to interfere with the ownership or alienation of the Property. The Court does not mean to suggest that the government, while it owns the Property, is not required to abide by bylaw restrictions on the use of the Property or that the government is not required to pay condominium fees. Those are rules of the Condominium and financial obligations of the Property's owner, not a right of the Board to affect the ownership of the forfeited Property. Notably, the Board *could* acquire a claim against the Property if those other bylaws are not followed, but there is no apparent dispute that the claim *would have to be raised and adjudicated* in a civil forfeiture action. In fact, the Board raised exactly such a claim for back payment of condominium fees in this case.

The parties spend a lot of effort arguing about whether the nature of the ROFR is contractual or if it "runs with the land." This distinction does not make any difference to the resolution of this motion.[1] The ROFR is a right (or interest) in the Property, and the Judgment forfeits all of those rights.

The ability of the Board to extract $2.5M from the Board's "designee" – *i.e.*, the entity the Board is planning to sell the Property to – further shows that the ROFR is a right or interest in the Property. In this case, the actual value of that interest is conveniently available – $2.5M. This illustrates that, unlike most of the Board's interests expressed in the bylaws, the use of the ROFR in this case is for nakedly monetary reasons. The Board explicitly wants to exercise the ROFR to gain the $2.5M and to prop up unit prices in the building, not to protect the unit or the building from improper or undesirable uses.[2]

Nor are two suggestions by the United States Marshal Service (USMS) that a ROFR might still exist relevant to the matter. The statement in the contract with the government's buyer means little because the USMS would have been wise to include a ROFR disclaimer in the contract in case the Board might try to enforce the ROFR notwithstanding the forfeiture judgment. And the Board has, in fact, done exactly that. The statement in the Notice of Intention to Sell is in a form sent from USMS to the Board to ask the Board to complete the ministerial tasks necessary to sell the Property. There is no indication

---

[1] It appears that the right more accurately arises as a matter of New York statutory law. New York Real Property Law § 339-j requires that "[e]ach [condominium] unit owner shall comply strictly with the by-laws and with rules, regulations, resolutions and decisions adopted pursuant thereto." New York law further explicitly authorizes condominium "[bylaw] [p]rovisions governing the alienation, conveyance, sale, leasing, purchase, ownership and occupancy of units." NY Real Prop § 339-v(2)(a).

[2] The Court does not mean to suggest that these monetary interests are unimportant. The observation is relevant because, unlike use restrictions, these monetary interests are of the type that civil forfeiture actions are designed to resolve.

that the USMS intended to reinstate a ROFR that would have been forfeited, that the USMS would even have the power to do so, or that the individual who signed the form would have any power, actual or apparent, to bind the USMS or the government to such an action. All of the actions that the Board attempts to use against the government that purportedly show the government's acknowledgment of the ROFR – *e.g.*, a request that the Board approve the government's buyer – can more easily be interpreted as the government seeking to confirm the absence of the very problem that gave rise to this motion – the possibility that the Board would attempt to raise the ROFR at some point during the sale or otherwise cloud title to the Property using the alleged ROFR.

The Court's previous stipulated orders for an interlocutory sale of the Property, while not conclusive as to the meaning of the Judgment, are also relevant and also favor the government. The Court has little trouble concluding that the interlocutory orders both do allow, and were intended to allow, the government to sell the Property within the bounds of the interlocutory orders without any further interference from the Board's use of the ROFR. The original stipulated interlocutory sale order states: "The Parties to this Stipulation will execute any and all documents necessary to consummate the sale of the Defendant Real Property, to convey clear title of the property to the buyers, and to further implement the terms of this Stipulation." Dkt. No. 88, ¶ 7.[3] The amended order is even more clear: "The Government shall have sole discretion to accept the offer ("Offer") described in

---

[3] The "buyers" referred to are, from context, the buyers who arise through the procedures of the interlocutory sale order. The order further states that "Claimant Board of Managers hereby agrees to expedite consideration of the Purchase Application, Notice of Intention to Sell and all other requirements necessary to consummate the sale of the Defendant Real Property." Id. The Board tries to claim that this shows that it could exercise a ROFR, but, as discussed earlier, the language only acknowledges that the Board needed to take certain procedural steps in order to convey title to the buyer. There is no indication that anyone thought that the Board could unilaterally scuttle the transaction by refusing to approve it at that point.

Movants' application or any offer that is within twenty-five (25) percent of the value of the Offer for the interlocutory sale of the Defendant Real Property." Dkt. No. 106, ¶ 1. Communications between the Board's attorneys and the government and declarations filed in this case also indicate the intention to sell the Property to the buyer found through the stipulated procedures and not subject to any ROFR. This is the context in which the stipulated consent Judgment was agreed upon and entered by the Court, and the context strongly favors the government's interpretation of the Judgment.[4]

For these reasons, the Court concludes that the ROFR is sufficiently connected to the ownership and alienation of the Property to qualify as a right or interest in the Property of the kind extinguished by the Judgment. The motion to enforce the Judgment is GRANTED.

Consistent with this order and the Judgment, the USMS has sole authority to execute any and all documents necessary to consummate the sale of the Defendant Property, to convey clear title of the property to a new buyer, and to further implement the terms of the Judgment. Neither the Qubaisi Claimants nor the Board shall contest or interfere with any sale entered into by the USMS for the Defendant Real Property, including through the assertion of any purported ROFR.

IT IS SO ORDERED.

Date: July 27, 2020

Dale S. Fischer
United States District Judge

---

[4] The Court also notes that an interlocutory sale of the Property could only have occurred through the procedures provided by statute or through procedures explicitly agreed to by the parties and authorized by the Court. See Fed. R. Civ. P. Suppl. G(7)(b)(iii). The Board's exercise of a ROFR is not allowed by either.