David A. Kettel, Esq. (State Bar No.125745)
dkettel@tocounsel.com
THEODORA ORINGHER PC
1840 Century Park East, Suite 500
Los Angeles, California 90067-2120
Telephone: (310) 557-2009
Facsimile: (310) 551-0283

Attorneys for Claimant THE BOARD OF MANAGERS OF THE WALKER TOWER CONDOMINIUM aka RESIDENTIAL SECTION OF THE WALKER TOWER CONDOMINIUM

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br>   Plaintiff, <br><br> vs. <br><br> REAL PROPERTY LOCATED IN NEW YORK, NEW YORK, <br><br>   Defendant. | Case No. CV-16-5376-DSF-PLA <br><br> **EX PARTE APPLICATION FOR STAY PENDING APPEAL** |
| BOARD OF MANAGERS OF THE WALKER TOWER CONDOMINIUM, aka RESIDENTIAL SECTION OF THE WALKER TOWER CONDOMINIUM, <br><br>   Claimant. | |

# TABLE OF CONTENTS

Page

INTRODUCTION ..................................................................................................... 5

MEMORANDUM OF POINTS AND AUTHORITIES ............................................ 5

I.   JURISDICTION ............................................................................................ 5

II.  LEGAL STANDARD ................................................................................... 6

III. ARGUMENT ................................................................................................. 6

    A.   An Appeal Has a Substantial Likelihood of Success ............................... 6

        1.   The Court Erred When it Found the Board Had Waived Its ROFR ................................................................................................ 7

        2.   The Board's ROFR With Respect to PH1 Did Not Ripen Until There Was a Contract of Sale and the U.S. Marshals Service Had Presented to the Board a Notice of Intention to Sell: Owner's Request for Waiver of Right of First Refusal ............................................................................................. 14

        3.   Standard of Review on Appeal ..................................................... 16

    B.   THE BOARD WILL BE IRREPARABLY INJURED ABSENT A STAY .................................................................................................. 16

    C.   THE ISSUANCE OF A STAY WILL NOT INJURE OTHER PARTIES INTERESTED IN THE PROCEEDING, AND THE PUBLIC INTEREST FAVORS A STAY ............................................ 18

IV.  CONCLUSION ............................................................................................ 18

## TABLE OF AUTHORITIES

**Page**

**CASES**

*Abrams v. Bd. of Managers of 25 Beekman Place Condominium,*
  No. 154144/2018, 2019 WL 1115727, at *2 (N.Y. Sup. Ct. Mar. 11, 2019).................................................................................................................. 8

*EIG Glob. Energy Partners, LLC v. TCW Asset Mgmt. Co.,*
  No. CV 12-7173 CAS MANX , 2012 WL 5990113 (C.D. Cal. Nov. 30, 2012) ............................................................................................................... 17

*Golfo v. Kycia Assocs., Inc.,*
  45 A.D.3d 531, 845 N.Y.S.2d 122 (App. Div. 2007) ) ................................ 11

*House v. Moller,*
  No. 2:09-CV-02796-MCE, 2012 WL 1292483 (E.D. Cal. Apr. 16, 2012) ............................................................................................................... 17

*Mich. Coalition of Radioactive Material Users. Inc. v. Griepentrog,*
  945 F.2d 150 (6th Cir. 1991) ....................................................................... 16

*Monterey Bay Military Hous., LLC v. Pinnacle Monterey LLC,*
  No. 14-CV-03953-BLF, 2015 WL 1548833 (N.D. Cal. Apr. 7, 2015) .......... 17

*Natural Res. Def. Council, Inc. v. Sw. Marine Inc.,*
  242 F.3d 1163 (9th Cir. 2001) ....................................................................... 5

*Nken v. Holder* ..................................................................................................... 6

*Pac. States Corp. v. Hall,*
  166 F.2d 668 (9th Cir. 1948) ....................................................................... 11

*Pacheco v. Serendensky,*
  393 F.3d 348 (2d Cir. 2004) ........................................................................ 10

*Pomerance v. McGrath,*
  124 A.D.3d 481 2 N.Y.S.3d 436 (1st Dep't 2015).................................... 7, 14

*Prudential Real Estate Affiliates, Inc. v. PPR Realty, Inc.,*
  204 F.3d 867, Cal. Daily Op. Serv. 1365, 2000 Daily Journal D.A.R. 1931, 2000 WL 201837 (9th Cir. 2000).......................................................... 17

*Scripps–Howard Radio, Inc. v. FCC,*
  316 U.S. 4 (1942) ........................................................................................... 6

*Stony Brook Shores Prop. Owners Ass'n, Inc. v. Liscia,*
  169 A.D.2d 712 564 N.Y.S.2d 192 (2d Dep't 1991) ................................ 7, 14

| | | |
|---|---|---|
| 1 | *United States v. Approximately $133,803.53 in U.S. Currency Seized from Washington Mut. Bank, N.A., Account #£4420842802, held in the Name of Advantage Fin.*, | |
| 2 | 683 F. Supp. 2d 1090 (E.D. Cal. 2010) | 13 |
| 3 | *United States v. Certain Real Property at 2525 Leroy Lane*, | |
| 4 | 910 F.2d 343 (6th Cir.1990) | 13 |
| 5 | *United States v. Gross*, | |
| | 482 Fed.Appx. 252 (9th Cir. 2012) | 10 |
| 6 | *United States v. Harris*, | |
| 7 | 246 F.3d 566 (6th Cir. 2001) | 10 |
| 8 | *United States v. Lavin*, | |
| | 942 F.2d 177 (3d Cir. 1991) | 11 |
| 9 | *Weber v. Sidney*, | |
| 10 | 19 A.D.2d 494 N.Y.S.2d 228 (1st Dep't 1963), aff'd, 14 N.Y.2d 929 N.E.2d 867, 252 N.Y.S.2d 327 (1964) | 7, 14 |
| 11 | *Wisdom Import Sales Company v. Labatt Brewing Company, Ltd.*, | |
| 12 | 339 F.3d 101 (2d Cir. 2003) | 17 |

**STATUTES**

| | | |
|---|---|---|
| Rule 62(c) F.R.C.P. | | 5 |
| Rule 8, F.R.A.P. | | 6 |

**OTHER AUTHORITIES**

| | | |
|---|---|---|
| Corbin on Contracts § 11.16 at 594 | | 13 |
| N.Y. Real Prop. Law § 339-j | | 7 |

**REGULATIONS**

| | | |
|---|---|---|
| Article VII Section 7.2 of the By-Laws | | 7 |
| By-Laws § 5.10(A) | | 12 |
| By-Laws § 5.7(B) | | 12 |
| By-Laws § 5.7(C) | | 12 |
| By-Laws § 6.2(A) | | 12 |
| By-laws Article I, §1.4 | | 7 |

# INTRODUCTION

Claimant Board of Managers of the Walker Tower Condominium, aka Residential Section of the Walker Tower Condominium ("the Board"), by and through its attorneys, Theodora Oringher PC, respectfully applies, ex parte, for an order staying this Court's July 27, 2020 Order Granting Motion to Enforce Judgment (Dkt. No. 124) ("Order") pending final resolution of the appeal in this matter. The Board filed its Notice of Appeal on July 30, 2020 (Dkt. No. 125).

The United States does not consent to a stay and even though a conference of counsel is not required prior to the filing of a motion or application to stay, the Board nevertheless is making this application following conferences of counsel pursuant to L.R. 7-3 which took place on August 10 and 11, 2020.

The United States has advised that it anticipates closing on the sale of the defendant real property this Friday, August 14, 2020.

Counsel for the Government are Woo S. Lee and Barbara Y. Levy, United States Department of Justice, 1400 New York Avenue, N.W., 10th Floor, Washington, D.C. 20530, Telephone (202) 514-1263, E-mails: Woo.Lee@usdoj.gov and Barbara.Levy@usdoj.gov, and John J. Kucera and Michael Sew Hoy, Assistant United States Attorneys, 312 N. Spring Street, 14th Floor, Los Angeles, California 90012, Telephone (213) 894-3391/3314, E-mails: John.Kucera@usdoj.gov and Michael.R.Sew.Hoy@usdoj.gov.

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. JURISDICTION

"Once a notice of appeal is filed, the district court is divested of jurisdiction over the matters being appealed." *Natural Res. Def. Council, Inc. v. Sw. Marine Inc.*, 242 F.3d 1163, 1166 (9th Cir. 2001). However, "[t]he district court retains jurisdiction during the pendency of an appeal to act to preserve the status quo." Id. "This exception to the jurisdictional transfer principle has been codified in Rule 62(c) of the Federal Rules of Civil Procedure, which allows a district court to

'suspend, modify, restore, or grant an injunction during the pendency of the appeal upon such terms as to bond or otherwise as it considers proper for the security of the rights of the adverse party.' " *Id.*

An appellate court's power to hold an order in abeyance while it assesses the order's legality has been described as inherent, and part of a court's "traditional equipment for the administration of justice." *Scripps–Howard Radio, Inc. v. FCC*, 316 U.S. 4, 9–10 (1942)[1]. That power allows a court to act responsibly, by ensuring that the time the court takes to bring considered judgment to bear on the matter before it does not result in irreparable injury to the party aggrieved by the order under review.

## II. LEGAL STANDARD

In ruling on a Rule 62(c) motion, courts consider "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the stay applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Nken v. Holder*, 556 U.S. 418, 434 (2009); *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987).

All four factors have typically been evaluated on a sliding scale, but the first two factors are the most important, *see Nken*, 556 U.S. at 434.

As discussed below, all four factors favor a stay.

## III. ARGUMENT

### A. An Appeal Has a Substantial Likelihood of Success

Walker Tower believes it is likely to succeed on the merits on appeal. The violation of the By-Laws, here the Government's refusal to recognize the Board's right of first refusal ("ROFR") with respect to the sale of the defendant real property

---

[1] Rule 8 of the Federal Rules of Appellate Procedure provides that a party must ordinarily move for a stay first in the district court unless moving first in the district court would be impracticable.

("PH1"), "is akin to a breach of contract." *Pomerance v. McGrath*, 124 A.D.3d 481, 482, 2 N.Y.S.3d 436, 439 (1st Dep't 2015).  See *Stony Brook Shores Prop. Owners Ass'n, Inc. v. Liscia*, 169 A.D.2d 712, 713, 564 N.Y.S.2d 192, 193 (2d Dep't 1991) ("The plaintiff subsequently acted in violation of its own by-laws when it counted certain "mail-in" ballots.  This was a violation of the defendants' contractual rights, because the by-laws of the plaintiff have the "force and effect of a contract""); *Weber v. Sidney*, 19 A.D.2d 494, 497, 244 N.Y.S.2d 228, 232 (1st Dep't 1963), aff'd, 14 N.Y.2d 929, 200 N.E.2d 867, 252 N.Y.S.2d 327 (1964) ("These by-law provisions, fixing the basis for the payment of salaries and dividends, are to be given the force and effect of a contract as between the stockholders. . . . The by-law provisions are without doubt controlling as to the liability of the corporation to the officers and stockholders unless we disregard the corporate entity.")

The Government is bound by the Walker Tower Condominium By-Laws as a Unit Owner, see By-laws Article I, §1.4 attached to the Board's Opposition to Motion to Enforce Consent Judgment ("the Board's Opposition") (Dkt. No. 119) as Exhibit C, and is acting in breach of Article VII Section 7.2 of the By-Laws by refusing to comply with the ROFR as exercised by the Board.  *See also N.Y. Real Prop. Law* § 339-j ("Each unit owner shall comply strictly with the by-laws and with rules, regulations, resolutions and decisions adopted pursuant thereto.  Failure to comply with any of the same shall be ground for an action to recover sums due, for damages or injunctive relief or both maintainable by the board of managers on behalf of the unit owners.").  The Government is brazenly doing just that, even though it has expressly acknowledged in its Notice of Intention to Sell that the sale of PH1 to Mr. Vinder is subject to the ROFR.  See Exhibit D to the Board's Opposition.

      **1.**  **The Court Erred When it Found the Board Had Waived Its ROFR**

The ROFR was not extinguished by the Stipulation or the Judgment. The

1  Judgment solely addresses the Board's lien on the property for common charges—
2  which was the sole basis for Walker Tower's claim in the forfeiture proceeding.
3  Nowhere does the Judgment discuss the Board's ROFR or the status of any future
4  sales of the PH1. And the Board was neither asked to waive its ROFR with respect
5  to Mr. Vinder, nor did it ever offer or agree to do so. Waiver of the ROFR was only
6  raised in connection with potential buyers Kevin Ulrich and Ekkehart Hassels-
7  Weiler in 2019 and then only when there was an offer on the table to purchase PH1
8  for $30 million.

9  Moreover, the Stipulation provided, upon the filing of a Consent Judgment,
10 for "the final and complete satisfaction of all claims asserted by the Parties "in this
11 action." See Stipulation (Dkt. No. 109 at page 6) (Emphasis added). Thus, the
12 Stipulation made clear that the Judgment only satisfied the claims for common
13 charges, which were the only claims asserted in the civil forfeiture proceeding.

14 Nevertheless, the United States made the dubious claim—without evidence—
15 that when the Board stipulated to the recovery of its common charges in the
16 forfeiture action, the Board intended to give up its valuable ROFR of future sales of
17 the property—a right which is exceedingly more valuable than the common charges,
18 and crucial for the Board to comply with its fiduciary obligation to preserve the
19 value of the building. *See Abrams v. Bd. of Managers of 25 Beekman Place*
20 *Condominium,* No. 154144/2018, 2019 WL 1115727, at *2 (N.Y. Sup. Ct. Mar. 11,
21 2019) (sustaining cause of action against the board of a condominium for breach of
22 fiduciary duty for breaching its obligation to preserve the value of the Unit, and
23 failing to protect the Unit from nuisances which lessened the values of the Unit and
24 the Building.)

25 This Government's contention is inconsistent with its own representations and
26 actions, and the various court filings in this matter. On at least three occasions
27 subsequent to the Consent Judgment, the Government effectively acknowledged and
28 conceded that the ROFR had remained intact. On May 13, 2020, Government

counsel Barbara Levy reached out to the Board to obtain Board approval for a potential sale of PH1 to Mr. Vinder.  *See* Exhibit P to the Board's Opposition.  This is an acknowledgement that the ROFR applies.  Separately, on May 13, 2020, the Government signed a contract of sale with Mr. Vinder for the sale of PH1 that expressly provides that the sale is subject to and conditioned upon the waiver of the ROFR.  *See* Exhibit E  to the Board's Opposition.  Finally, on May 22, 2020, the Government signed and submitted a signed document to WTC's managing agent, Douglas Elliman Property Management, entitled "Notice of Intention to Sell or Lease: Owner's Request for Waiver of the Right of First Refusal," where the Government expressly acknowledges and agrees that, in connection with the sale of PH1 to Mr. Vinder, the Board has a 30-day period to exercise its ROFR with respect to PH1.  *See* Exhibit D to the Board's Opposition.

The Government's representations are also inconsistent with the Court's Prior Orders, which indicate that the ROFR still survives.  On July 3, 2019, the Court entered an Order for Interlocutory Sale, which provided that the Board would "expedite consideration of the Purchase Application, Notice of Intention to Sell and all other requirements necessary to consummate the sale of the Defendant Real Property."  (Dkt. No. 88).  The reference to the Notice of Intention to Sell (Exhibit D to the Board's Opposition), which triggers the time period for the Board to exercise its ROFR, is a strong indication that the Parties and the Court intended for the ROFR to continue to apply.  The March 19, 2020 amendment to the Order for Interlocutory Sale expressly kept in place"[a]ll other sale terms and procedures" in the prior order.  And neither, the Consent Judgment nor any other order stated that it was displacing the Court's prior Interlocutory Sale Orders.  (Dkt. No. 106).

Moreover, contrary to the Government's assertions, nothing in any filing-- including the Joint Ex Parte Application to Amend Order for Interlocutory Sale and Substitute Res (Dkt. No. 93) or the Amended Order for Interlocutory Sale and Substitute Res (Dkt. No. 106) (attached to the Board's Opposition as Exhibits N and

O, respectively)--states or even infers that if the Board would waive its ROFR and accept any price for PH1's sale within a range of $17.25 million and $23 million. See Government's Motion to Enforce Consent Judgment of Forfeiture (Dkt. No. 116) at pages 2, 3, and 7.

Indeed, federal courts have acknowledged the necessity of carefully partitioning forfeited property to even allow for the "partial forfeiture" of property to account for the rights of innocent third parties. To do otherwise would grant the Government an undeserved windfall of an innocent third-parties' interests. See *United States v. Gross*, 482 Fed.Appx. 252, at *3 (9th Cir. 2012)(acknowledging that in a civil forfeiture proceeding (and in criminal forfeiture proceedings), property is forfeited subject to third party interests. "Thus, when the defendant owns real property with innocent others, the statute may require a partial forfeiture."); *Pacheco v. Serendensky*, 393 F.3d 348, 355 (2d Cir. 2004) (acknowledging the ability in a civil forfeiture to permit partial forfeitures so that the government does not receive a windfall of a third party's interest in a property).

Moreover, as a matter of general fairness, the Government cannot acquire better title than the prior owner who held PH1 subject to the Board's ROFR. Criminal forfeiture cases are instructive. With civil and criminal forfeiture statutes, Congress intended to vest in the government the same substantive rights, despite their technical differences. *See Pacheco*, 393 F.3d at 355 ("we join those circuits that have recognized Congress' intention to vest in the government the same substantive rights under the two statutes, notwithstanding their technical differences"). Accordingly, cases in the criminal forfeiture context are instructive to the extent that, like here, a criminal defendant whose actions were that basis for the forfeiture owned the forfeited property.

Under those circumstances, and as a matter of general fairness, federal courts have acknowledged that the Government cannot acquire better title that what the prior owner had. See *United States v. Harr*is, 246 F.3d 566, 575-76 (6th Cir. 2001)

("the government steps into the shoes of the defendant acquiring only the rights of the defendant at the time of the criminal acts, and nothing more."); *United States v. Lavin*, 942 F.2d 177, 185 (3d Cir. 1991) ("Thus, if a third party's interest in the forfeited property, at the time of the criminal acts, was superior to the criminal defendant's interest, then the interest that the government acquires when it steps into the defendant's shoes is subordinate to that of the third party.")

Thus, under the terms of the Judgment and the Stipulation, in accordance with the Government's own representations and as a matter of basic equity, the Government's ownership of PH1 remains subject to the By-Laws and the ROFR.

The District Court erred in endorsing the Government's backdoor waiver theory. This Court acknowledges that "Neither the Judgment nor the stipulation between the parties filed with the proposed judgment explicitly addresses the ROFR." Nevertheless, the Court went on to find that, that very Judgment waived the ROFR, when it provided that:

> Upon entry of this Consent Judgment, all right, title, and interest of the Qubaisi Claimants and the Board of Managers of Walker Tower in the defendant real property shall be forfeited to the United States, and no other right, title, or interest shall exist therein, unless otherwise provided in this Order.

However, this Court's finding is inconsistent with well-settled law.

One cannot waive a right implicitly. It is hornbook law that "[a] valid waiver requires . . . either an express agreement or by such conduct or a failure to act as to evince an intent not to claim the purported advantage. A waiver is not created by negligence, oversight, or thoughtlessness, and cannot be inferred from mere silence." *Golfo v. Kycia Assocs., Inc.*, 45 A.D.3d 531, 532–33, 845 N.Y.S.2d 122, 124 (App. Div. 2007) ); *see also Pac. States Corp. v. Hall*, 166 F.2d 668, 671 (9th Cir. 1948) (finding no implied waiver of right to interest payments where did not appear on statements by oversight and there was no express waiver of such

payments, "At any rate, waiver consists of a voluntary and intentional relinquishment of a known right; and to prove a case of implied waiver of a legal right, as appellees here attempt to do, there must be a clear, unequivocal and decisive act of the creditor showing a purpose to abandon or waive the legal right, or acts amounting to an estoppel on his part.")

To highlight the potentially absurd result that follows from the Government's backdoor/implicit waiver argument, we noted that the Government's argument that Walker Tower implicitly waived its "rights" in the Property could easily lead to the nullification each and every other obligation a Unit Owner has under the Condominium's Declaration of Condominium and By-Laws, including: the obligation to pay common charges (By-Laws § 6.2(A)); restrictions on the use of each Residential Unit to residential purposes (By-Laws § 5.7(B)); the requirement that the Unit Owner seek Board approval to use a Unit as a provisional or business office, which the Board may grant or deny in its discretion (By-Laws § 5.7(C)); or the Board's right to access a Unit to make inspections, remove violations or cure defaults under the By-Laws or Declaration of Condominium (By-Laws § 5.10(A)).

Nevertheless, this Court—without citing a single case or statute—concluded that "the ROFR is sufficiently connected to the ownership and alienation of the Property to qualify as a right or interest in the Property of the kind extinguished by the Judgment." In reaching this conclusion, the Court draws a largely arbitrary, and factually inaccurate, distinction between the ROFR and other obligations in the By-Laws. The court held: "the ROFR is different from other aspects of the bylaws that do not give the Board an ability to interfere with the ownership or alienation of the Property." However, the Board's right to access the unit (By-Laws § 5.10(A)), the requirement that the property be used for residential purposes (By-Laws § 5.7(B)); or the requirement that the Unit Owner seek Board approval to use the Unit as a provisional or business office By-Laws § 5.7(C)) are all restrictions on the use and possession of the Unit—which are key aspects of "ownership." Yet the Court does

not dispute that these "rights" provided for in the By-Laws remain intact.

This Court cites no authority for its conclusion because there is no such authority. The ROFR here, is simply not an "interest in the property" as it is understood by New York law, but a separate contractual right, unaffected by the Judgment. New York law determines whether the Board had an interest in PH1 for the purposes of the civil forfeiture laws. See *United States v. Approximately $133,803.53 in U.S. Currency Seized from Washington Mut. Bank, N.A., Account #£4420842802, held in the Name of Advantage Fin.*, 683 F. Supp. 2d 1090, 1093 (E.D. Cal. 2010); *United States v. Certain Real Property at 2525 Leroy Lane*, 910 F.2d 343, 348 (6th Cir.1990) (observing that "[p]roperty interests have long been acquired and defined by state law"). Whereas the Board's lien on PH1, and a mortgage or tax lien, are "interests" in land since they are obligations secured by the property, a right of first refusal, here, arising from the By-Laws, is simply a contractual right. New York Courts have held that "[t]he claim . . . that as a result of the preemptive right the defendants have an interest in land, confounds the nature of that right [of first refusal]":

> The option holder has priority over the third-party purchaser with notice of the option and may maintain a suit for specific performance against the third-party purchaser. This is supported by the greater number of decisions. The reason is not that the option holder has an 'interest' in the land, but because the option holder has contract rights that ought to be respected by third persons. It is as a result of this and not as a reason for it, that we may properly say that the option contract has created an equitable interest in the land.

*Smolian*, 49 Misc. 3d 408 at 423 quoting *Corbin on Contracts* § 11.16 at 594-59.

That the ROFR is not an interest in property but, rather, a contractual right unaffected by the Judgment is made further evident by the claims available to enforce this right. To enforce a ROFR in New York, one would not bring an *in rem* proceeding, such as a foreclosure. One would bring an action for breach of contract.

See *Pomerance*, 124 A.D.3d 481, 482, 2 N.Y.S.3d 436, 43 (held that a violation of the By-Laws "is akin to a breach of contract."); *Liscia*, 169 A.D.2d 712, 713, 564 N.Y.S.2d 192, 193 ("The plaintiff subsequently acted in violation of its own by-laws when it counted certain "mail-in" ballots. This was a violation of the defendants' contractual rights, because the by-laws of the plaintiff have the "force and effect of a contract""); *Weber v. Sidney*, 19 A.D.2d 494, 497, 244 N.Y.S.2d 228, 232 ("These by-law provisions, fixing the basis for the payment of salaries and dividends, are to be given the force and effect of a contract as between the stockholders.")

### 2. The Board's ROFR With Respect to PH1 Did Not Ripen Until There Was a Contract of Sale and the U.S. Marshals Service Had Presented to the Board a Notice of Intention to Sell: Owner's Request for Waiver of Right of First Refusal

In its order granting the Government's Motion, the Court stated, among other things:

> [t]here is no dispute that, in the typical case, the Board possesses a [right of first refusal "(ROFR)"]  with respect to a unit sold within the Walker Tower Condominium. This right is conveyed in the Condominium's bylaws. Neither the Judgment nor the stipulation between the parties filed with the proposed judgment explicitly addresses the ROFR."

However, the Judgment and Stipulation filed and entered on May 6, 2020 (Dkt. Nos. 109 and 110)  did not address the ROFR because it was not yet ripe. In fact, the Board had not even been advised of the name of the buyer or the proposed sale price by May 6, 2020. Therefore, it would have been premature for the Board to try to "exercise" its ROFR in the absence of a contract of sale between the Government and a third party. But the Government did not enter into a Contract of Sale with potential buyer Ron Vinder until May 13, 2020, one week later. *See* Exhibit E to the Board's Opposition. In fact, May 13, 2020 was the first time the Board was even advised that Mr. Vinder would be purchasing PH1 and that the sales

price was $18.5 million. *See* Exhibit R to the Board's Opposition.

Importantly, the Contract of Sale (Exhibit E to the Board's Opposition) provides, in paragraph 8, that it is "subject to and conditioned upon a waiver of the right of first refusal held by the Condominium and exercised by the Board." Although the Stipulation and Judgment do not discuss the Board's ROFR, the Contract of Sale *does* and expressly provides that Mr. Vinder would need a waiver of the ROFR in order to close on PH1.

As indicated above, once the U.S. Marshals Service ("USM")/the Government became the owner of the defendant real property pursuant to the Judgment, it became subject to all of the provisions of the condominium By-Laws. Accordingly, on May 22, 2020, the USM submitted to Walker Tower Condominium's managing agent, Douglas Elliman Property Management, a signed document entitled "Notice of Intention to Sell: Owner's Request for Waiver of Right of First Refusal" in connection with the Contract of Sale of the defendant real property to Ron Vinder. *See* Exhibit D to the Board's Opposition. In the Notice of Intention to Sell, the USM expressly agrees that that the Contract of Sale to Ron Vinder is subject to the ROFR process. Specifically, it provides:

> The undersigned represents that the sale or lease described above shall be made strictly in accordance with the provisions of the By-Laws of the Condominium and agrees to promptly deliver to the Board of Managers all such further information with respect to the offer as the Board may reasonably request.
>
> The undersigned acknowledges that the Board has a 30 day period, commencing with the date that the Board is in receipt of this notice as well as the delivery of such additional information concerning the offer as the Board may reasonably request, to exercise its right of first refusal to purchase or lease the apartment unit on the terms specified

herein and in the By-Laws. The undersigned hereby requests that, if the Board elects to waive or release right of first refusal, it deliver to the undersigned a certificate to that effect, pursuant to the provisions of the By-Laws.

Shortly after submitting the Notice of Intention to Sell: Owner's Request for Waiver of Right of First Refusal, the USM submitted a fully executed copy of the Contract to the Board for review. *See* Declaration of Penelope Marzulli in support of the Board's Opposition, ¶ 17.

### 3. Standard of Review on Appeal

The Court's Order does not rest on factual findings or discretionary rulings to which an appellate court will owe deference. Accordingly, an appeal will involve unrestricted *de novo* evaluation of the controlling questions of law, therefore lending further support for the Board's contention that it is likely to succeed on the merits on appeal.

### B. THE BOARD WILL BE IRREPARABLY INJURED ABSENT A STAY

"In evaluating the harm that will occur depending upon whether or not the stay is granted, [courts] generally look to three factors: (1) the substantiality of the injury alleged; (2) the likelihood of its occurrence; and (3) the adequacy of the proof provided." *Mich. Coalition of Radioactive Material Users. Inc. v. Griepentrog*, 945 F.2d 150, 154 (6th Cir. 1991).

The Board and Walker Tower Condominium will suffer irreparable harm if the Stay is not granted and the sale is permitted to close. (The Government anticipates that the sale of PH1 to Ron Vinder will close this Friday, August 14, 2020).

Courts have found irreparable harm where bargained-for management rights relating to the ability to control of a corporation are affected, since they are impossible to recover. See *EIG Glob. Energy Partners, LLC v. TCW Asset Mgmt.*

*Co.*, No. CV 12-7173 CAS MANX , 2012 WL 5990113, at *9 (C.D. Cal. Nov. 30, 2012) (finding potential for irreparable harm where potential acquisition would change business structure, ownership and management of the entity) citing *Wisdom Import Sales Company v. Labatt Brewing Company, Ltd.*, 339 F.3d 101 (2d Cir. 2003) (finding potential for irreparable harm where minority where majority shareholder sought to violate the minority's veto power over fundamental matters affecting the company); *Monterey Bay Military Hous., LLC v. Pinnacle Monterey LLC*, No. 14-CV-03953-BLF, 2015 WL 1548833, at *10 (N.D. Cal. Apr. 7, 2015) (finding irreparable harm where, without the injunction, the management of the corporation would be affected).

Courts have found the potential for irreparable harm where a party's right of first refusal over the transfer of real estate is at issue. *See Prudential Real Estate Affiliates, Inc. v. PPR Realty, Inc.*, 204 F.3d 867, 878, 00 Cal. Daily Op. Serv. 1365, 2000 Daily Journal D.A.R. 1931, 2000 WL 201837 (9th Cir. 2000) (found potential for irreparable harm where bargained for right of first refusal over sale of shares was at issue); *House v. Moller*, No. 2:09-CV-02796-MCE, 2012 WL 1292483, at *7 (E.D. Cal. Apr. 16, 2012) (irreparable harm where right of first refusal over real estate transaction at issue).

If a stay is not granted, the Board and Walker Tower Condominium will suffer irreparable harm. Walker Tower could very well lose its bargained-for right of first refusal over sales by the eventual purchaser, effectively exempting Mr. Vinder and future purchasers from a crucial provision of the By-Laws. The loss of the right of first refusal is not recoverable. A sale that is made at less than 40% of market value will also devalue the Units owned by other WTC residents by tens of millions of dollars. (Marzulli Decl. attached to the Board's Opposition, ¶ 30.) Moreover, the Board would be in breach of its fiduciary duty to preserve the value of the property, potentially subjecting the Board to further litigation.

### C. THE ISSUANCE OF A STAY WILL NOT INJURE OTHER PARTIES INTERESTED IN THE PROCEEDING, AND THE PUBLIC INTEREST FAVORS A STAY

A stay will not injure the Government or the victims of Al-Qusaibi's crimes in Malaysia, and the public interest favors a Stay. In the event the Stay is granted and the appeal is decided in the Board's favor, the Board has a designee, Walker Tower PH1 Group, LLC, who stands ready to pay the Government—and, by extension, Al-Qusaibi's victims—100 cents on the dollar of its sale price. The Government stands to lose nothing regardless of the result of the Appeal. In addition, should the Board win the Appeal, the Board will be able to preserve the value of the building and units, and comply with its fiduciary obligations to the Unit Owners, who have no relation to Al-Qusaibi and who do not deserve to be punished for his alleged crimes.

### IV. CONCLUSION

For all of the reasons discussed above, the Board respectfully submits that the Court should grant the Board's application for a stay pending appeal.

DATED: August 13, 2020           THEODORA ORINGHER PC

By:  /s/ David A. Kettel
David A. Kettel
Attorneys for Claimant THE BOARD OF MANAGERS OF THE WALKER TOWER CONDOMINIUM aka RESIDENTIAL SECTION OF THE WALKER TOWER CONDOMINIUM